OPINION *Page 2 
{¶ 1} Appellant Freddie Hannah appeals the March 2, 2007 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating Appellant's parental rights and granting permanent custody to Appellee Tuscarawas County of Job and Family Services.
 {¶ 2} Hope Pendziwiatr (DOB 6-9-93), Charity Hannah (DOB 10-15-98), Kevin Hannah (DOB 10-29-00), Raheem Hannah (DOB 10-29-00) and Faith Hannah (DOB 12-25-01) are the children of Amy Pendziwiatr.[1]
Appellant is the father of the youngest four children. Anthony Blackshear was initially identified as the putative father of Hope.
 {¶ 3} On November 5, 2004, the trial court held a hearing pursuant to Juv.R. 6 and removed the children from Amy Pendziwiatr's custody to be placed in Appellee's temporary custody. Appellee filed a complaint on November 8, 2006 alleging the children to be neglected and dependent. Appellee amended the complaint to add Anthony Blackshear as the putative father of Hope. Appellant did not participate in the proceedings at that time as he was incarcerated for drug and property theft crimes.
 {¶ 4} On January 5, 2005, the trial court held an adjudicatory hearing. At the hearing, Ms. Pendziwiatr agreed to stipulate to a finding of dependency if Appellee dismissed the allegations of neglect. The trial court granted Appellee's motion to dismiss the neglect allegations and accepted Ms. Pendziwiatr's admission of dependency. Ms. Pendziwiatr accepted the terms of the case plan which had the ultimate goal of reunification of her children into her home. *Page 3 
 {¶ 5} Ms. Pendziwiatr progressed with her case plan and the visitations with her children progressed. Ms. Pendziwiatr's first unsupervised, overnight visitation with her children was scheduled for July 29, 2005. During that visit, however, Ms. Pendziwiatr allowed Appellant to have contact with the children without approval of the trial court or Appellee. Appellant was released from prison in June, 2005. Based on this incident, on August 15, 2005, Appellee filed a notice with the trial court notifying it that visitation with Ms. Pendziwiatr and her children was terminated.
 {¶ 6} In August 2005, Appellant contacted Appellee to be added to the case plan. On October 19, 2005, Appellee filed a Motion for Permanent Custody. The trial court held an initial hearing on the motion on December 17, 2005. Appellant appeared at the hearing and was officially added to the case plan. At the time of the initial hearing, Appellee completed a home study on the home of Dr. and Mrs. Dutcher.
 {¶ 7} Based on the favorable home study of the Dutchers, Appellee moved to dismiss their request for permanent custody and instead requested an extension to place the children with the Dutchers. The trial court held a hearing on March 15, 2006 and granted Appellee's motion for extension. The court placed the children in the temporary custody of the Dutchers over the Guardian ad Litem's objection. Ms. Pendziwiatr consented to the placement as the goal of the parties was the reunification of Ms. Pendziwiatr and her children.
 {¶ 8} On June 27, 2006, Appellee moved the court for a Review Hearing of the placement, based on issues that arose between Appellee and the Dutchers. The Dutchers had consented to a medical procedure for one of the children without advising Appellee, Ms. Pendziwiatr or the court. The Dutchers were also not aiding in the *Page 4 
reunification of Ms. Pendziwiatr with her children. On August 7, 2006, the children were placed back in the temporary custody of Appellee after a shelter care hearing.
 {¶ 9} On August 8, 2006, Appellee filed an agreed judgment entry authorizing supervised in-home visitation between Ms. Pendziwiatr and her children. The visits were moved from Appellee's visitation room to Ms. Pendziwiatr's home to see if the visits go more smoothly. The court also added Appellant to the visitation order.
 {¶ 10} On September 12, 2006, Appellee moved for permanent custody as the case had reached its statutory sunset date. Before the evidentiary hearing scheduled for March 1, 2007, the parties continued to work for reunification of the children and their parents. Visitation between the parents and children were terminated, however, when one child recounted a past incident of sexual abuse alleged to have been perpetrated by Appellant. While the child recanted the allegations, visitation was not reinstated.
 {¶ 11} The trial court issued its decision on March 1, 2007 granting Appellee's motion, finding the children had been in the temporary custody of Appellee for 12 of the previous 22 months and the disposition was in the childrens' best interests. It is from this decision Appellant now appeals.
 {¶ 12} Appellant raises one Assignment of Error:
 {¶ 13} "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH THE APPELLANT AND THAT IT WAS IN THE MINOR CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES." *Page 5 
 {¶ 14} Appellant claims the trial court erred in granting permanent custody of his children to Appellee. We disagree.
 {¶ 15} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 16} Revised Code 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 17} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for *Page 6 
twelve or more months of a consecutive 22-month period ending on or after March 18, 1999.
 {¶ 18} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 19} In the case sub judice, the trial court found that two of the four circumstances delineated in R.C. 2151.414(B)(1) were found by clear and convincing evidence. First, the trial court found the Pendziwiatr/Hannah children have been in Appellee's custody for 12 or more months in a consecutive 22-month period under division (d) of the statute. Appellant did not appeal this finding. Pursuant to R.C.2151.414(B)(1), this conclusive finding, coupled with a showing by clear and convincing evidence that permanent custody is in the best interest of the children, provides a sufficient basis for this Court to affirm the trial court.
 {¶ 20} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. *Page 7 
 {¶ 21} In its judgment entry, the trial court found that factor R.C.2151.414(E)(1) existed with respect to Appellant. R.C. 2151.414(E)(1) states:
 {¶ 22} "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 23} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 24} Upon review of the record, we find the trial court did not err in finding by clear and convincing evidence that the Pendziwiatr/Hannah children should be placed in the permanent custody of Appellee. *Page 8 
 {¶ 25} Case manager Gabrielle Weingarth testified Appellee has been involved with the Pendziwiatr/ Hannah children since 1994. (Tr. 89). The Guardian ad Litem's report submitted on February 8, 2007 reflects Appellee's history with Ms. Pendziwaitr, including repeated reports of filthy living conditions, physical abuse of the children, exposure of the children to dangerous and inappropriate men and the older children taking on inappropriate responsibilities for their home and younger siblings. (GAL Report, February 8, 2007, 1-2).
 {¶ 26} Appellant did not have any known contact or relationship with his children until his supervised visits started in September 2006. (Tr. 9, 12). Appellant was released from prison in June, 2005. Until Appellant was permitted visitation in August, 2006, he was not to have any contact with the children. It became apparent to Appellee, however, that Appellant was residing with Ms. Pendziwaitr. (Tr. 10). Appellant told Appellee that he was residing at a number of different residences, but mail sent to Appellee at those residences was returned from the post office because Appellant did not reside there. (Tr. 10).
 {¶ 27} At Ms. Pendziwaitr's first unsupervised overnight visit with her children in July, 2005, she permitted Appellant to have contact with the children. (Tr. 76). Earlier, Ms. Pendziwiatr expressed fear of Appellant to Ms. Weingarth. (Tr. 76). Ms. Pendziwiatr stated that she would receive threatening letters from Appellant while he was in jail stating that he was going to harm her and the children. (Tr. 76). Ms. Weingarth further testified that Ms. Pendziwiatr was "concerned about having overnights with the children because she was afraid Appellant would come and take the children or hurt her or the children." (Tr. 76-77). *Page 9 
 {¶ 28} When Appellant was permitted visitation, his visitations with his children were more successful than with Appellant. (Tr. 10). Family Service Aide, Wendy Azzardi, testified that the childrens' behavior actually improved during Appellant's involvement. (Tr. 10-11). In Ms. Azzardi's opinion, however, the childrens' reduction in bad behavior was the result of Appellant's controlling and domineering parenting style. (Tr. 17). She witnessed unnecessarily long time-outs for relatively minor infractions. (Tr. 17). Ms. Azzardi also testified that she witnessed some severe interaction between Appellant and his dog that she felt demonstrated his domineering attitude towards his childrens' behaviors. (Tr. 18-20). Ms. Azzardi testified that she witnessed Appellant get very upset with his dog because the dog wagged its tail when it was not told to do so. (Tr. 19).
 {¶ 29} Appellant's controlling behavior was also exhibited when dealing with Appellee's staff. (Tr. 77). One such incident involved the childrens' visitation during Thanksgiving. Case Manager Gabrielle Weingarth testified that Appellant told Appellee's staff that the children would be visiting on Thanksgiving "whether we wanted it or not." (Tr. 78). The children had already made plans to spend Thanksgiving with their foster family and indicated that they did not want to go to home for Thanksgiving. (Tr. 76).
 {¶ 30} Appellant did not complete his individual counseling as required by his case plan because he felt that he did not need counseling. (Tr. 70-72). The parties further stipulated that Appellant did not complete his substance abuse counseling. (Tr. 115). Ms. Weingarth testified that Appellant would dictate when he would complete *Page 10 
his drug screens, after it was explained to him that these were random drug screens. (Tr. 76). Appellant had two positive drug screens. (Tr. 72).
 {¶ 31} Ms. Weingarth testified the older four children have expressed a desire to not be returned to Appellant's home. (Tr. 81). Ms. Weingarth stated that only Faith, the five-year-old, has consistently stated that she wanted to return to Appellant's home, but because she wanted to go to the Head Start program with her brothers and sisters. (Tr. 81). At this time, Faith's foster parents have been working with Faith and providing her with equivalent teaching in the home. (Tr. 80).
 {¶ 32} The Guardian ad Litem recommended permanent custody. (GAL Report, 7).
 {¶ 33} As noted by the trial court, the childrens' behaviors and Ms. Pendziwiatr parental skills actually improved with Appellant's involvement. There is testimony, however, that this improvement was due to the controlling and domineering behavior of Appellant — something Ms. Pendziwiatr actually feared before Appellant was released from prison. (Tr. 76). Further, the children have expressed their desire to not be placed in this situation again. *Page 11 
 {¶ 34} Upon review, we find sufficient, competent and credible evidence in the record to support the trial court's finding by clear and convincing evidence, and find the trial court did not err in determining the best interests of the child was best served by terminating the parental rights and granting permanent custody to Appellee.
 {¶ 35} The sole Assignment of Error is denied.
Delaney, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.
[1] Amy Pendziwiatr also filed an appeal of the trial court's March 2, 2007 decision under Case No. 2007 AP 03 0025. *Page 1